**Kendra FRY and Benjamin Thompson, Plaintiffs,**

v.

**BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN SYSTEM, Defendant.**

No. 96–C–0292–S.

United States District Court, W.D. Wisconsin.

Dec. 5, 2000.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Defendant Board of Regents moved for summary judgment on remand to this

Court. After defendant argued new grounds for summary judgment in its reply brief the Court granted plaintiffs leave to file a surreply. Plaintiffs' surreply did not respond to defendant's new arguments but instead sought summary judgment in their favor. Defendant's reply asserted yet additional arguments for summary judgment just eight days before the scheduled trial date. Given the insufficiency of defendant's legal arguments, the parties' disjointed presentation of the facts surrounding the student fee program's guidelines and use of discretion, and defense counsel's Rule 56(f) affidavit the Court concludes that summary judgment must be denied.

## MEMORANDUM

Defendant pursues three legal arguments on summary judgment. First, it maintains that plaintiffs lack standing. Second, that plaintiffs' action constitutes an impermissible facial challenge to the University's program. Finally, it argues that the possession of discretion by the program decision-makers is not legally sufficient to find that the program deviates from the principle of viewpoint neutrality.

Defendant's legal arguments center on its underlying contention that past viewpoint discrimination in the allocation of student funds must be shown by plaintiff. Such a contention would be justified where plaintiffs claim that they have been denied access to the forum on the basis of their viewpoint. *Rosenberger v. Rector and Visitors of Univ. Of Va.*, 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). The present case, however, is a compelled speech case. The Supreme Court recognized that the University owes a duty under the First Amendment to students who object to being forced to subsidize speech by other students. *Board of Regents of the University of Wisconsin v. Southworth*, 529 U.S. 217, 120 S.Ct. 1346, 1355, 146 L.Ed.2d 193 (2000). The Court ruled that the First Amendment requires safeguards and pro-

tections in the program for the rights of objecting students. *Id.* at 1354–56. In the context of compelled funding of a *Rosenberger* forum the Supreme Court held that "[v]iewpoint neutrality is the justification for requiring students to pay the fee in the first instance. . . ." *Id.* at 1356. Accordingly, a system operating on the principle of viewpoint neutrality is a prerequisite for the collection of fees from students with the intention of distributing them for objectionable speech. Pursuant to the parties' stipulation (since vacated on remand) that the program was viewpoint neutral the Supreme Court found that the University's program in its basic structure was consistent with the First Amendment. *Id.* at 1356. The Court must now determine whether that basic structure is consistent with the First Amendment in absence of the stipulation. Whether the program decision-makers have engaged in actual discrimination is not dispositive of whether the program's basic structure operates upon and safeguards the principle of viewpoint neutrality.

The standing doctrine is a part of the Article III requirement limiting federal jurisdiction to the adjudication of actual "cases" and "controversies." *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The doctrine requires that the parties invoking a federal court's authority show that they have suffered some actual or imminent injury that is fairly traceable to the challenged conduct of the defendant and that is likely to be redressed by the requested remedy. *Valley Forge Christian College v. Americans United for the Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

Plaintiffs Fry and Thompson have standing in this case. Their standing does not depend on whether an unrelated student organization claims that it was discriminated against in the allocation of funds. Plaintiffs Fry and Thompson imminently face the imposition of a student

activity fee that is used in part to fund student groups with positions and views to which they object. This, in the absence of the University's proper recognition of its duty to these objecting students, is a constitutional injury. *See Southworth,* 120 S.Ct. at 1355. Defendant's obligation is met by maintaining a system of fund distribution that is operated upon the principle of viewpoint neutrality, *id.* at 1354, but plaintiffs allege and have shown evidence that the program as designed lacks the viewpoint neutrality necessary to protect their rights as objecting students under *Southworth* because of the asserted high degree of discretion accorded program decision-makers. These plaintiffs possess the injury, traceability and redressibility necessary to have standing.

■ The other plaintiffs must be dismissed. The passage of time has mooted their claims. Plaintiffs' complaint seeks injunctive and declaratory relief. Plaintiffs Southworth, Schoepke, Bannach, Vander Werf, Fletcher, and Bretz are all former students. They no longer face imminent injury because as former students they are not required to pay the student activity fee. Their only injury could be the past payment of the fee, but that is an injury not sought to be redressed under the complaint. Contrary to plaintiffs' assertion these plaintiffs' claims are not "capable of repetition, evading review." Upon the record there is no reasonable expectation that the injury, here the payment of the activity fee, would recur as between the parties and that the resulting claim would evade review. *Honig v. Doe,* 484 U.S. 305, 318–20, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

Defendant further pursues its discrimination argument under the guise of its contention that plaintiffs' action amounts to an impermissible facial challenge. Defendant argues that a facial challenge is inappropriate here because the University program inheres no risk of chilling First Amendment rights. Plaintiffs are then required to bring an applied challenge and allege and prove actual discrimination against a registered student organization.

■ By asserting a facial challenge a party seeks to vindicate the rights of others who may be adversely affected by the statute or government enactment. *City of Chicago v. Morales,* 527 U.S. 41, 119 S.Ct. 1849, 1858 n. 22, 144 L.Ed.2d 67 (1999). In this case, however, defendant would require plaintiffs, under a so-called applied challenge, to litigate the rights of a third-party student group. An applied challenge as formulated by defendant would raise the issue of third-party standing normally sought to be avoided in facial challenges. *See id.* Plaintiffs only challenge the program's method of fund distribution as it relates to their compelled speech claim. Because of this unique situation and the fact that federal case law is devoid of precedent applying the "facial versus applied" dichotomy to compelled speech cases, the said dichotomy is an inappropriate basis for dismissing this case.

■ Finally, defendant argues that plaintiffs' claim of "unbridled discretion" vested in the decision-makers is not the appropriate standard by which to determine the constitutionality of the University's fee program. Defendant is partially correct—the Supreme Court established viewpoint neutrality as the applicable standard. The University cannot compel fees from its students to support the ideological and political speech of others absent a distribution structure that assures that allocations do not vary by or depend upon the recipient's viewpoint. In other First Amendment contexts the possession of discretion by a governmental decision-maker over whether to permit or deny expressive activities poses a serious threat of viewpoint discrimination. *Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 763, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 553, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). That threat appears to be present here where by all accounts the program decision-makers are limited by very few objective guidelines and have sig-

nificant discretion to choose among widely divergent and opposing student groups for the disbursement of limited funds.

The Supreme Court in *Southworth* recognized and accorded weight to the University's interest in the effective facilitation of a wide range of speech. *Southworth*, 120 S.Ct. at 1355. Defendant maintains that an effective fee distribution system necessarily involves some degree of discretion vested in the program decision-makers. Given these competing considerations the parties must be given the opportunity to fully present the surrounding facts. A trial is necessary to establish what objective standards guide the decision-makers' determinations. The nature and extent of the discretion possessed by these decision-makers must also be established. After this the Court can determine whether the degree of discretion vested in the program decision-makers is consistent with viewpoint neutrality.

### ORDER

IT IS ORDERED that the parties' motions for summary judgment are DENIED, except as to the dismissal of plaintiffs Southworth, Schoepke, Bannach, Vander Werf, Fletcher, and Bretz.